Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | RONALD A. GUZMÁN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4917 | **DATE** | 12/5/03 |
| **CASE TITLE** | Thomas Little v. U.S. Parole Commission | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. The clerk shall cause the amended petition for habeas corpus to be served upon Respondent Warden Graber together with a copy of this order, and shall transmit copies of the amended petition and this order to the U.S. Parole Commission, the U.S. Attorney and the Attorney General. All respondents other than Warden Graber are dismissed. Respondent is directed to respond to petitioner's claim 4 as directed in the court's order within twenty days of the date this order is entered on the court's docket; all other claims are dismissed.

(11) ■ For further detail see order attached to the original minute order.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States ex rel. )
)
THOMAS LITTLE, )
)
    Petitioner, ) No. 03 C 4917
)
    v. ) Judge Ronald A. Guzmán
)
J.F. GRABER, Warden[1] )
)
    Respondent. )

DOCKETED
DEC 1 1 2003

MEMORANDUM OPINION AND ORDER

Petitioner Thomas Little, a prisoner in federal custody at the Metropolitan Correctional Center in Chicago, has petitioned for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the United States Parole Commission's revocation of his parole pursuant to 18 U.S.C. § 4214(d).[2] Following a hearing conducted on December 27, 2001, the Commission's hearing examiner found that petitioner had assaulted a co-worker, Deborah Bartmann, and threatened her with scissors on August 4, 2000. The hearing examiner recommended that petitioner's parole be revoked and that he be required to serve the remainder of his 20-year sentence for bank robbery without re-parole. The Commission accepted the recommendation on January 23, 2002, and the Commission's National Appeals Board rejected petitioner's appeal on June 19, 2002. The court has jurisdiction pursuant to 28 U.S.C. § 2241 and 28 U.S.C. § 1331.[3]

---

[1] The proper respondent for a petition for habeas corpus is the person having custody of the petitioner. 28 U.S.C. §§ 2242, 243. The warden of the facility at which the petitioner is currently serving his sentence is the appropriate respondent even where the petition challenges actions by the Parole Commission.

[2] The Sentencing Reform Act of 1984 repealed the federal parole statute, 18 U.S.C. §§ 4201-4218, effective November 1, 1987, but it remains in effect with respect to federal offenders such as petitioner whose offenses were committed before that date. See annotation to 18 U.S.C.A. § 4201 (West 2003).

[3] Although petitioner invokes the Administrative Procedures Act, 5 U.S.C. § 551 et seq. (APA), Congress has determined that the Commission's decision to revoke parole under 18 U.S.C. § 4203(b)(3)(repealed) is "committed to agency discretion," 18 U.S.C. § 4218(d) (repealed), making it unreviewable under the APA. 5 U.S.C. § 701(a)(2).

## PROCEDURAL HISTORY

This is petitioner's second petition for habeas corpus in this court. On October 1, 2001, petitioner filed *Little v. U.S. Parole Commission*, No. 01 C 7574, claiming that he was entitled to be released because the Commission had unreasonably and unlawfully delayed his parole revocation hearing. The government responded on December 13, 2001, stating that the delay was largely attributable to the petitioner, and that a revocation hearing had been scheduled for December 27, 2001. On January 16, 2002, petitioner filed an affidavit statement, again blaming the Commission for the delay in holding his revocation hearing, but admitting that the hearing had been held on December 27, 2001. Petitioner asserted that he was innocent of the assault charge sustained by the hearing examiner, and argued that the examiner's recommended disposition, that he be imprisoned for the remainder of his sentence, was excessive in view of the offense, his record, and his character.

In response, the government filed a "Suggestion of Mootness" on January 30, 2003, advising the court that on January 23, 2002, the Commission had accepted the hearing examiner's recommendation and had issued a notice of action revoking petitioner's parole.[4] The government asked that the habeas corpus petition be dismissed as moot, since petitioner had received a revocation hearing and could seek no other relief; judicial review of the Commission's action would be available only after petitioner had taken an administrative appeal to the Commission's National Appeals Board. The court agreed, and dismissed the action as moot on February 12, 2002.

After the Commission delayed in ruling on petitioner's administrative appeal, on March 20, 2002, petitioner filed a petition for habeas corpus in the Western District of Louisiana, where he

---

[4] The government attached as exhibits to the "Suggestion of Mootness" copies of the hearing examiner's Revocation Hearing Summary and the Commission's Notice of Action. Copies of these documents were not made exhibits to the present petition, but the court takes judicial notice of these Commission documents filed in the prior proceeding.

2

was then incarcerated, but that petition was ultimately dismissed without prejudice as premature.[5] Petitioner then filed the present petition July 16, 2003. On October 6, 2003, this court dismissed the petition without prejudice, finding it "rambling, replete with unnecessary and often irrelevant legal argument, personal history, and irrelevant complaints." Petitioner was granted leave to file an amended petition limited to 15 pages and was instructed to present each claim separately, together with the facts supporting it

The court noted in the October 6 order that it had lacked jurisdiction to address the Commission's revocation order in the prior habeas proceeding. Petitioner was accordingly free to challenge the order on any available legal ground, although the court indicated that a number of objections raised by the petition appeared frivolous. Nevertheless, the court stated that petitioner's principal claim in the prior petition, that the Commission's unlawful delay in providing preliminary and final revocation hearings entitled him to release, was independent of the revocation order, had been properly before the court in the prior proceeding, had been rejected on the merits, and would not be reconsidered.[6]

Petitioner's amended petition, filed October 28, 2003, ignored that instruction, and remains conspicuously short of factual allegations showing that petitioner is entitled to relief. The conclusory "notice pleading" permitted in civil suits is inadequate in habeas cases, since "the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Advisory Committee Note to Habeas Rule 4 (quoting *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). *See Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996). After carefully reviewing

---

[5] See *Little v. U.S. Parole Comm'n*, No. 02-CV-565 (W.D.La.), dismissed July 8, 2002 (unpublished order), aff'd mem., *Little v. U.S. Parole Comm'n*, No. 02-30797 (5th Cir. July 9, 2003). Although the National Appeals Board decided petitioner's appeal on June 19, 2002, before the district court dismissed the petition, it was not timely mailed to the petitioner, and both he and the court were left with the misapprehension that petitioner's appeal had not been completed. Petitioner accuses the Commission of deliberately waiting to mail the notice until after his appeal had been dismissed.

[6] "No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255." 28 U.S.C. § 2244(a).

3

the petition, the court will direct respondent to respond to one claim, as explained below, and dismisses the remaining claims.

## LEGAL STANDARD OF REVIEW

Before reviewing petitioner's claims, the court notes that the amended petition reflects at least three basic misunderstandings of the law. First, petitioner's right to habeas relief depends on whether his *custody* violates the Constitution or laws of the United States, 28 U.S.C. § 2241, not whether some irregularity has been committed by his *custodian*. "Section 2241 does not permit review of prison and parole decisions after the fashion of the Administrative Procedure Act; a prisoner seeking relief under § 2241 must demonstrate that the custody is unlawful, and not just that an administrative official made a mistake in the implementation of a statute or regulation." *Bush v. Pitzer*, 133 F.3d 455, 456-57 (7th Cir. 1997). Because incapacitation and deterrence of criminals is essential for the survival of society, criminal justice is not a neutral game in which the government's violation of the law cancels out the defendant's. Mistakes or even misconduct by the government in enforcing the law will not normally release a criminal defendant from responsibility unless Congress or the Supreme Court has determined that the Constitution or overriding social policy requires that result.

Second, Petitioner protests his innocence of the conduct upon which the Commission relied in revoking his parole. However, as long as the proceedings were constitutionally adequate, actual innocence is not grounds for habeas relief, at least in non-capital cases. *Herrera v. Collins*, 506 U.S. 390 (1993). Federal habeas corpus is no more than a backstop insuring fundamentally fair proceedings, and fundamentally fair proceedings do not guarantee that innocent people will not be convicted by false testimony. A plausible claim of innocence in itself does not entitle petitioner to a new hearing, much less to release.

Third, revocation of parole is not equivalent to a criminal prosecution. Although released on parole, petitioner was not a free citizen. A federal parolee "remain[s] in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which such parolee was sentenced." 18 U.S.C. § 4210(a)(repealed). Parole revocation is not a

4

prosecution leading to conviction of a crime, but an administrative determination as to how a convicted person will spend the remainder of the sentence imposed for the crime of which he was originally convicted.

Because revocation of parole is not part of a criminal prosecution, "the full panoply of rights" due a criminal defendant does not apply. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Rather, parole, once granted, represents a liberty interest protected by the Due Process Clause of the Fifth Amendment, or, in the case of state-law parole, the Fourteenth. The government must act in accordance with "due process of law," but the protections granted specifically to criminal defendants by the Fifth and Sixth Amendments do not apply.

Parole revocation is a two-step procedure. The supervising agency first decides whether the parolee has violated the conditions of his parole, and then determines what the appropriate result should be. The second step is discretionary within the limits of applicable law, because it depends on the agency's special competence in predicting offenders' future behavior from their past actions. This second step, however, necessarily depends upon the determination of whether the parolee committed the acts alleged to have violated his parole. *Id.*, 408 U.S. at 479-480.

This determination calls for the elements of due process enumerated in *Morrissey*: (a) written notice of the claimed violations; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing confrontation); (e) a neutral and detached decisionmaker, and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking parole. *Id.* at 489.

If these elements are present, the court may not reweigh the evidence presented to the Commission. "[W]hen a district court reviews a decision of the Parole Commission on a habeas corpus petition, the inquiry is not whether the Commission is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." *Walrath v. Getty*, 71 F.3d 679, 684 (7th Cir. 1995)(internal quotations omitted). Within these limits the court reviews petitioner's claims.

5

## PETITIONER'S CLAIMS

Petitioner's Claim 1 is not a claim, as it alleges no facts whatever. Claim 2 asserts that petitioner "was denied a timely complete written notice of claimed parole violations," but contains no allegations to support a claim that he had inadequate notice of the charges against him. The rest of the claim rehashes petitioner's claim of pre-hearing delay that was denied when the court dismissed his prior petition. As the court stated when it dismissed petitioner's prior petition, the remedy for pre-hearing delay is an order for a hearing. Prehearing delay does not invalidate the proceeding unless petitioner can show *both* that the delay is unreasonable and that he has been prejudiced by the delay. See *Villareal v. United States Parole Comm'n*, 985 F.2d 835, 837 (5th Cir. 1993); *Donn v. Baer*, 828 F.2d 487, 490 (8th Cir. 1987); *Heath v. United States Parole Comm'n*, 788 F.2d 85, 89-90 (2d Cir. 1986); *Moore v. Conner*, ___ F.Supp.2d ___, 2003 WL 22227553 at *7-8 (N.D.Ill. September 25, 2003)(Gettleman, J.). Petitioner's assertion that the delay "caused witnesses to become exasperated as well as the plaintiff and his attorneys. Which in the long run caused [petitioner's] defense to fail," is so speculative as to be frivolous.

In Claim 3, petitioner again blames the Commission for the delay in his receiving a hearing, claiming "these are very serious delays which caused the plaintiff to fail in his defence," Again, petitioner does not explain why. Petitioner asserts that the Commission "never had any intentions of affording the plaintiff a prompt, full and fair opportunity to defend himself." Petitioner does not explain how he has personal knowledge of the "intentions" of the Commission, whatever that might mean. In any event, the question is not what the Commission intended but what petitioner received.

Claim 4 asks "whether [petitioner] was denied exculpatory evidence in regards to the taped transcripts, date August 9, 2000. In regards to the interview Det. Miller ... had with [complaining witness] Deborah L. Bartmann." Due process requires disclosure of material exculpatory evidence known to the prosecution, including impeachment evidence. See *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner, however, does not actually claim this evidence was not disclosed to him. Rather, he complains that he "did not even receive this complete material until after the second revocation hearing of Oct. 1, 2001," but acknowledges he

6

received it prior to the final hearing on December 27, 2001. Petitioner's real claim appears to be that he did not "have time to review all of the inconsistencies of Bartmann in prior statements" with his attorney prior to the hearing.

There are three gaps in this claim. First, petitioner does not allege when he himself received the transcript. Second, petitioner has no claim unless the transcript would have been material to his defense, and petitioner does not allege what inconsistencies in Bartmann's accounts he or his attorney could have raised at the hearing if the interview transcript had been given to him earlier.[2] Third, the Commission's hearing officer could not be expected to know without being told that petitioner's attorney needed more time to go over the transcript. Petitioner does not allege that his attorney asked for a recess or a continuance to review the transcript before proceeding. If no objection was made at the hearing, petitioner has waived this claim.

Nevertheless, the court does perceive in Claim 4 a claim that the government will be required to answer. As the court understands Notes 3 and 4 to Claim 4, petitioner alleges that only when he read this transcript, sometime between October 1 and December 27, 2001, did he learn that Bartmann had not only accused him of simple battery, i.e., forced and unwanted physical contact, but had also accused him of threatening her with scissors. Bartmann testified at the hearing that petitioner had threatened her with scissors, the hearing examiner credited her testimony, and it appears that this finding materially affected his recommendation. The hearing examiner explained his recommendation as follows:

> Your parole violation behavior has been rated as Category Five severity because it involved both criminal and administrative violations, specifically: you assaulted a victim to commit a sexual act. In addition, you threatened the victim by pointing scissors at her eyes, nose, mouth, and behind her ear, causing her great mental distress.

---

[2] Petitioner states that he "did attempt to show an example of 7 very important points" in his prior habeas petition filed in Louisiana, without stating what they were. Although this court can take judicial notice of documents filed in other courts, it is not this court's responsibility to seek out documents filed elsewhere to construct plaintiff's claims for him. The court is unimpressed with petitioner's assertion that the court's 15-page limit prevented him from alleging these essential facts, since petitioner chose to fill pages with inessential, and mostly wrong, legal argument.

7

This language was repeated in the Commission's Notice of Action. It appears from the Commission's guidelines that the Category 5 classification resulted from the hearing examiner's finding that petitioner committed an assault with a dangerous weapon. There was no finding that the assault occurred in the commission of another offense or that bodily injury was inflicted, the other circumstances that would result in a Category 5 ranking.[8]

If Bartmann's testimony that the petitioner threatened her with scissors were merely part of the evidence proving the conduct with which petitioner was charged, the Commission was only required to disclose it "at or before the revocation hearing." 28 CFR § 2.50(d). On the other hand, if the determination that petitioner threatened Bartmann with scissors was effectively a separate "offense," or materially increased the appropriate penalty under the Commission's guidelines, due process would require the petitioner to have been formally charged with it.

It appears that the revocation of petitioner's parole was predicated upon his having violated the criminal law of Illinois. Under Illinois law, one who "makes physical contact of an insulting or provoking nature" commits battery, see 720 ILCS 5/12-3, while threatening a person with scissors is an aggravated assault, see 720 ILCS 5/12-2.[9] These are separate crimes, and could

---

[8] The Commission's guidelines classify assault behavior as follows:

**211 Assault During Commission of Another Offense**

(a) If serious bodily injury results or if 'serious bodily injury is the result intended' grade as Category Seven;

(b) If bodily injury results, or a weapon is fired by any offender, grade as Category Six;

(c) Otherwise, grade as Category Five.

**212 Assault**

(a) If serious bodily injury results or if 'serious bodily injury is the result intended' grade as Category Seven;

(b) If bodily injury results or a dangerous weapon is used by any offender, grade as Category Five;

(c) Otherwise, grade as Category Two

28 C.F.R. § 2.20. Exceptions (d)(1) and (d)(2), assault on a "protected person" or law enforcement, judicial, or correctional official and assault committed while resisting arrest or detention, respectively, are irrelevant here.

[9] An assault with a deadly weapon other than by discharging a firearm is defined as an aggravated assault by 720 ILCS 5/12-2. Although not specifically mentioned, there is little doubt that scissors can be a deadly weapon. See *People v. Jones*, 157 Ill.App.3d 106, 510 N.E.2d 116 (1st Dist. 1987)(murder using scissors).

8

at the hearing. Although Boer did not testify at the hearing, it appears that Boer gave a statement to the police on August 6, 2000, that was considered together with Bartmann's statement in finding probable cause to proceed with the parole revocation. The hearing examiner also lists the police report as part of the evidence considered.

Petitioner does not give the content of Boer's statements to the police, and so has not provided a foundation for a claim that fundamental fairness required that he have been permitted to cross-examine Boer. Nor does petitioner state what exculpatory evidence Boer might have given had he been called as petitioner's witness, other than the possibility that Boer might relate that Bartmann had given a different account immediately after the incident than she subsequently gave to the police. Since nothing in the examiner's report indicates that the hearing examiner relied on hearsay statements by Boer contained in the police report, petitioner has not provided a sufficient foundation for this claim.

The court further notes that petitioner does not allege that he or his attorney asked for a continuance of the hearing so that a subpoena could be obtained compelling Boer to attend, as permitted by 28 C.F.R. § 2.51. Since Boer was named as petitioner's victim in a separate charge of aggravated assault, compelling Boer to attend the hearing in the hope that he would help impeach Bartmann would unsheathe a two-edged sword. In view of the benefit petitioner obtained from Boer's absence, the court will not find that due process required his presence.

Claim 6 again complains that petitioner was required to proceed with the hearing assisted by counsel who had not been given adequate time to prepare and consult with him. The court understands this as essentially a claim of ineffective assistance of counsel. The right to counsel in parole revocation proceedings is statutory, 18 U.S.C. § 4214(a)(2)(B), not constitutional, see *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). Assuming that ineffective assistance of counsel would amount to a denial of due process in this context, such a claim still requires a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Once more we come back to the question of why it would have made a difference, and petitioner doesn't say.

have been prosecuted as such. The hearing examiner's report indicates that the assault with scissors was not mentioned in the police report that originally furnished probable cause to commence petitioner's revocation proceedings. While that would not in itself prevent the Commission from raising it as part of its grounds for revoking parole, it does not appear that petitioner was ever formally charged with this conduct. The hearing examiner's report shows that petitioner was charged with aggravated assault against Dennis Boer, a charge that was not sustained because Boer did not appear to testify. However, petitioner was only charged with assault, not aggravated assault, against Bartmann.

In a criminal prosecution, the Fifth Amendment forbids the "constructive amendment" of an indictment to permit a defendant to be convicted of a crime with which he was not formally charged, even if the proof is adequate, or even overwhelming. See *Stirone v. United States*, 361 U.S. 212 (1960); *United States v. Pigee*, 197 F.3d 879, 887 (7th Cir. 1999). Petitioner was entitled to due process, not the specific guarantees of the Fifth Amendment as such. Nevertheless, our system of justice typically separates charging from trial, and this separation is maintained in the Commission's own procedures. At the commencement of the revocation procedure, a parolee is entitled to receive a statement of charges with the warrant or summons. 28 CFR § 2.44(e). At the preliminary interview, "the interviewing officer shall review the violation charges with the parolee [and] apprise the parolee of the evidence which has been presented to the Commission . . . . " 28 CFR § 2.48(c). If the Commission determines there is probable cause to proceed, "[n]otice to the parolee . . . finding probable cause and ordering a revocation hearing shall state the charges upon which probable cause has been found and the evidence relied upon." 28 CFR § 2.48(d)(3). If, at these preliminary stages, petitioner was not apprised of Bartmann's claim that he assaulted her with scissors, and informed that, if proven, the Commission would rely upon it in determining whether his parole should be revoked and whether he would be eligible for re-parole, petitioner did not receive due process of law. The government will be required to answer Claim 4.

Claim 5 asserts that petitioner was denied his right to confront and cross-examine Dennis Boer. According to the hearing examiner's report, a separate charge of aggravated assault against Dennis Boer (spelled as "Bore" in petitioner's filings) was dismissed because Boer did not appear

9

Claim 7 asserts that the Commission "used false information to establish probable cause to violate plaintiff's parole." It is unclear what petitioner is claiming. False information can provide probable cause, as long as it is not known to be false at the time. It appears petitioner is claiming that the evidence upon which the Commission found probable cause to proceed with parole revocation went beyond the police report upon which the state criminal charges had been based; if so, this was not improper. Further, to the extent petitioner is referring to the charge of aggravated assault against Dennis Boer, that claim is moot because the Commission made no findings on this charge. To the extent petitioner is claiming that he was not initially accused of threatening Bartmann with scissors, this falls under Claim 4 as discussed above.

Petitioner complains that he was not given any information concerning the charges for two months, referring to the delay between the execution of the parole violator warrant on November 20, 2000, and his preliminary hearing on January 28, 2001. As stated above, the court determined in dismissing the prior habeas petition that the delay was not grounds for release.

Claim 8 alleges that unnamed "U.S. Parole Officials, B.O.P. Officials" classified petitioner as a "Special Offender" without hearing or notice, "which has for years subjected [petitioner] to special oppressive treatment and harassment." This is frivolous. Petitioner does not explain what this purported "Special Offender" classification entails or by whom it was made. Petitioner appears to be referring to a practice found unconstitutional in *Catalano v. United States*, 383 F.Supp. 346 (D.Conn. 1974), in which persons believed to be associated with "organized crime" received different treatment with respect to prison privileges and consideration for parole. Petitioner gives no reason to suppose that any such formal classification scheme exists today. Petitioner also asserts he has been subjected to retaliation because his account of prison life at Leavenworth was featured in *The Hot House* by Pete Earley, a book that appeared in 1992, and because he has brought lawsuits against prison officials.

Petitioner does not name the particular officials mentioned in the book or in his lawsuits whom he alleges have retaliated against him, nor what their alleged retaliatory actions were. Such vague and generalized claims of persecution are meaningless. In any event, claims of "special oppressive treatment and harassment" are irrelevant to a petition for habeas corpus, in which

11

petitioner may challenge only the fact or duration of his custody, not the conditions of his confinement. The latter may properly be challenged only in a civil suit, which a federal prisoner may bring against the United States under the Federal Tort Claims Act, or, in the case of alleged constitutional violations, against individual federal officers pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[10]

Petitioner does allege in his second Claim 8 that his supposed "Special Offender" classification impacted his parole revocation because "there is no way that either the U.S.P.O. N. Fran-Smith nor the revocation hearing officer were not bias[ed] hence were no[t] impartial. Because they knew [petitioner] had been classified a special offender." This is speculation upon speculation, since petitioner does not explain how he has personal knowledge *either* that he has been classified as a special offender by the B.O.P. or that the Commission personnel handling his initial interview and revocation hearing were aware of it. Petitioner's only evidence, that the hearing examiner interrupted the revocation hearing to telephone someone in Washington, D.C., is completely unpersuasive. There is nothing improper in an administrative hearing officer contacting members of his own staff or even his supervisor concerning a question arising during a hearing. Claim 8 is dismissed.

Claim 9 objects that petitioner's original "sentence" of 48 to 60 months for violating his parole was increased to 7 years when he appealed. The court responded to this claim in its previous order. Revocation of petitioner's parole meant that petitioner had to serve out his original sentence, with credit given for time on parole; there was no new "sentence" of 48 to 60 months for violating his parole. According to the Commission's notification of parole revocation, Commission guidelines indicated that petitioner should serve 48 to 60 months of prison time after revocation before being eligible for reparole. However, calculated from the time of revocation,

---

[10] As the Seventh Circuit explained in *Moran v. Sondalle*, 218 F.3d 647, 650-52 (7th Cir. 2000), there are major differences between habeas corpus and civil rights actions. (*Moran* addressed claims brought by state prisoners, but the distinction applies equally to claims by federal prisoners.) A habeas action is brought against the prisoner's custodian, while a civil rights suit is brought against those participating in the alleged constitutional violation. Different remedies must be exhausted in each case. A federal civil rights complaint incurs a $150.00 filing fee, rather than the $5.00 charged for a habeas petition, and a prisoner-plaintiff incurs a "strike" under 28 U.S.C. § 1915(g) if his civil complaint fails to state a claim upon which relief may be granted.

petitioner would be entitled to mandatory release within less than five years (60 months) after his arrest on November 20, 2000 for violating his parole, assuming good behavior. Since that period of incarceration fell within the guideline range, and the Commission found that a departure from the guidelines was not warranted, the Commission determined petitioner would not be entitled to reparole before the expiration of his sentence. The "seven years" to which petitioner refers is the time between his reincarceration on November 20, 2000, and the full-term expiration date of his original sentence, November 7, 2007. Because of petitioner's accumulated good-time credit it was never anticipated that he would be held that long. According to the BOP's calculation of June 28, 2002, Pet. Exh. 4, petitioner's release date was to be July 11, 2005. The BOP's website currently gives his anticipated release date as June 13, 2005. The court does not have the information to independently confirm the BOP's calculations, but petitioner's claim that his sentence was somehow altered clearly rests on a misunderstanding. Claim 9 is dismissed. Claim 10 attempts to lump the other claims together in a claim of cumulative error and is also dismissed.

## CONCLUSION

All claims are dismissed except Claim 4, understood as a claim that the Commission based its decision in part on conduct with which petitioner was never charged, i.e., that he threatened Bartmann with scissors. Respondent shall respond to this claim within thirty days of the date of this order. Together with this response, respondent shall file copies of the following documents:

(a) the parole violator warrant;

(b) the notice of finding of probable cause and any supplements, amendments or revisions thereto;

(c) the transcript of the revocation hearing;

(d) the police report of August 6, 2000;

(e) the transcript of the August 9, 2000 police interview with Deborah Bartmann;

(f) any other materials, including notes or records of oral statements, that were before the hearing examiner, whether or not actually considered, including any statements by petitioner or his attorney;

(g) petitioner's appeal; and

13

(h) the Commission's complete response to the appeal.

The court notes that if petitioner prevails on this claim, the lesser offense of simple battery will still remain as a basis for revoking his parole and he may not be entitled to immediate release. Nevertheless, the Commission will have to justify any new or revised order on the basis of the less severe offense. If, after reviewing this order, the Commission determines that it erred in basing its revocation order in part upon uncharged conduct, the Commission may, upon notice to the court and in lieu of answering petitioner's claim, issue a revised revocation determination within thirty days of the date of this order reflecting only the properly charged conduct and scheduling the petitioner for immediate or deferred re-parole as appropriate. Petitioner may file a reply within thirty days of the response or revised order, limited to 15 pages. The court will rule by mail.

IT IS SO ORDERED.

Ronald A. Guzmán, Judge
United States District Court

DATED: 12/5/03